UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CR-18-86-G |
| | ) | |
| TOMMY DEAN BULLCOMING, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Now before the Court are three motions to suppress evidence, filed through counsel by Defendant Tommy Dean Bullcoming: (1) Defendant's Motion to Suppress Evidence Derived from Illegal Search of Mobile Home (Doc. No. 97), (2) Defendant's Motion to Suppress Evidence Obtained from the Illegal Search of the Lexus RX 300 Vehicle (Doc. No. 98), and (3) Defendant's Motion to Suppress Evidence Derived from Illegal Search and Seizure of Defendant's Black Bag (Doc. No. 99). The government has responded in opposition (Doc. Nos. 104, 105). On September 25, 2019, the Court conducted an evidentiary hearing on the motions. Defendant appeared personally and through counsel, Mark L. Henricksen, Susan M. Otto, and Jeff Byers. The government appeared through Assistant United States Attorneys Arvo Q. Mikkanen and Mark R. Stoneman. The Court heard the testimony of Special Agent Micah Ware of the Bureau of Indian Affairs and Ms. Mia Raya[1] and received government's exhibit 1 and Defendant's exhibits 1 through 32.

---

[1] The Court determines that the testimony of these witnesses is credible as to the portions cited and relied upon herein.

Upon consideration of the evidence and the parties' arguments, the Court makes its determinations.

I. DEFENDANT'S MOTION TO SUPPRESS EVIDENCE DERIVED FROM THE SEARCH OF THE MOBILE HOME

Defendant moves to suppress evidence obtained from the searches of Ms. Linda Zotigh's mobile home, located at 305 S. 9th Street, Hammon, Oklahoma, on Indian land. According to the evidence received at the hearing, the searches occurred on the morning of September 7, 2017, during an arson investigation, and again on September 11, 2017, with the consent of Ms. Zotigh's daughter Mia Raya. Hr'g Tr. (Doc. No. 136) 56:16-18, 103:1-15. Agent Ware entered the mobile home again with the consent of Mia Raya on or around September 13, 2017, to retrieve a knife. Hr'g Tr. 110:14-25, 111:1-14.

By his motion, Defendant challenges the searches of the mobile home on the ground that Mia Raya did not possess the authority to consent to the searches. *See* Doc. No. 97, at 4-8. The government submits several arguments in response, including that (1) Defendant lacks standing to challenge the validity of the search because he did not have a reasonable expectation of privacy in the mobile home, (2) Mia Raya's consent was constitutionally sufficient because, as one of Zotigh's children and next of kin, Mia Raya had apparent authority to consent to the search, and (3) the search was justified by exigent circumstances. *See* Doc. No. 105, at 10-18, 21-23.

a. Standing

"Fourth Amendment rights are personal and cannot be claimed vicariously." *United States v. Valdez Hocker*, 333 F.3d 1206, 1208 (10th Cir. 2003). Accordingly, "[t]he

proponent of a motion to suppress has the burden of adducing facts at the suppression hearing indicating that his own rights were violated by the challenged search." *United States v. Eckhart,* 569 F.3d 1263, 1274 (10th Cir. 2009) (internal quotation marks omitted) (quoting *United States v. Allen,* 235 F.3d 482, 489 (10th Cir. 2000)). To demonstrate that his individual constitutional rights were violated by the warrantless searches of the mobile home, Defendant "must show that he had a subjective expectation of privacy in the premises searched and that society is prepared to recognize that expectation as reasonable." *United States v. Higgins*, 282 F.3d 1261, 1270 (10th Cir. 2002) (internal quotation marks omitted).

While "[t]he text of the [Fourth] Amendment suggests that its protections extend only to people in 'their' houses," the Supreme Court has held that "in some circumstances a person may have a legitimate expectation of privacy in the house of someone else." *Minnesota v. Carter*, 525 U.S. 83, 89 (1998). The Tenth Circuit has recognized that, "as a general rule, social guests will have an expectation of privacy in their host's home," and that "an ongoing and meaningful connection to [the host's] home as a social guest" may confer "standing to challenge the government's search and seizure of evidence from the . . . residence." *United States v. Rhiger*, 315 F.3d 1283, 1286-87 (10th Cir. 2003).

In this case, the evidence showed that Zotigh was the sole owner of the mobile home. Hr'g Tr. 147:6-14. Zotigh and Defendant had been in a relationship off and on for around two years prior to her death. Defendant stayed with Zotigh in her mobile home during the times they were in a relationship and stayed with family members during the periods of time in which they were not. Hr'g Tr. 104:3-12. Even when Defendant was

3

living with Zotigh, Zotigh did not allow Defendant to stay in her mobile home when she was out of town, and Defendant did not have a permanent key to the mobile home. Hr'g Tr. 28:6-8, 144:16-22, 152:2-5. When Agent Ware asked Defendant for biographical information following his arrest, Defendant identified a P.O. box address. The P.O. box address was also listed as his address on the Cheyenne and Arapahoe tribes' official list of tribal members. Hr'g Tr. 29:18-25, 30:1-13. When Agent Ware asked Defendant where he lived, Defendant responded something to the effect of "here and there," rather than Zotigh's address. Hr'g Tr. 30:7-8.

The evidence further showed that prior to traveling to Arizona on or around August 31, 2017, Zotigh arranged for Defendant to stay with her neighbors Wendell and Chris Johnson. Hr'g Tr. 27:4-25, 28:1-11. While in Arizona, Defendant's relationship with Zotigh "soured" and Zotigh stopped responding to his text messages. Hr'g Tr. 28:23-25, 29:1-12. The evidence showed that when Zotigh arrived back to Hammon, Oklahoma from Arizona, she contacted Wendell Johnson and asked him to tell Defendant to remove his belongings and clothing from her mobile home. Hr'g Tr. 31:19-25, 32:1-12. Agent Ware testified that it was evident from Zotigh's text messages with Defendant and her communications with Wendell Johnson that her relationship with Defendant had terminated. Hr'g Tr. 32:15-18.

First, Defendant's statements to Agent Ware indicating that he lived "here and there" and did not have a physical address, coupled with Defendant's acquiescence to Zotigh's request that he stay with her neighbors while she was away, substantially undermine Defendant's claim of a subjective expectation of privacy in Zotigh's mobile

4

home at the time of the searches. Even assuming, however, that Defendant did have a subjective expectation of privacy in the mobile home, the Court concludes that this expectation of privacy is not "one that society is prepared to recognize as 'reasonable.'" *Smith v. Maryland*, 442 U.S. 735, 740 (1979) (internal quotation marks omitted).

Though Defendant may have had an "ongoing and meaningful connection to [Zotigh's] home as a social guest" at certain times prior to the searches, Zotigh's termination of their relationship, her refusal to allow Defendant to stay in her mobile home while she was away, and her decision not to give him a permanent key to the mobile home illustrate that Defendant could not claim an objectively reasonable expectation of privacy in Zotigh's mobile home as a social guest at the time the warrantless searches occurred. *Rhiger*, 315 F.3d at 1287; *see, e.g.*, *United States v. Poe*, 556 F.3d 1113, 1122-23 (10th Cir. 2009) (finding the defendant had a reasonable expectation of privacy in host's home where defendant had a key and host "never indicated that she did not want [him] in the house or that he was there without permission"); *United States v. Thomas*, 372 F.3d 1173, 1176 (10th Cir. 2004) (finding defendant could challenge search of aunt and uncle's home when he was there as a social guest with plans to spend the night and "his plans were 'okay' with his aunt and uncle"); *Rhiger*, 315 F.3d at 1287 (noting that in *Unites States v. Pollard*, 215 F.3d 643 (6th Cir. 2000), the Sixth Circuit found the defendant had a reasonable expectation of privacy in friend's home in part because he "was permitted to be in home while owners were absent"); *United States v. Castro*, 225 F. App'x 755, 758 (10th Cir. 2007) (explaining that the Defendant had been "sent packing after assaulting his girlfriend and thus had no objectively reasonable expectation of privacy remaining in the apartment

. . . at the time of the raid"); *see also United States v. Battle*, 637 F.3d 44, 49 (1st Cir. 2011) ("A defendant lacks a legitimate expectation of privacy in a place . . . when he does not have permission to be present."); *United States v. McCarthy*, 77 F.3d 522, 535 (1st Cir. 1996) (finding no legitimate expectation of privacy in items left in host's trailer after the host told the defendant to leave).[2]

Moreover, Zotigh's status as a host terminated at her death, as she no longer had "ultimate control of the [mobile home]" and could not "admit or exclude [guests] from the house as [she] prefer[red]." *Minnesota v. Olson*, 495 U.S. 91, 99 (1990). Because a social guest must have the "permission of his host," any expectation of privacy Defendant may have claimed in the mobile home as Zotigh's social guest would no longer be reasonable or legitimate after her death, at the time the warrantless searches of the mobile home took place. *Id.*

---

[2] At the hearing, Defendant's counsel posited that Defendant had established through his presence in the mobile home a lease interest in the property and thereby retained a reasonable expectation of privacy in the residence through the dates of the searches as, in essence, a tenant at sufferance. Tr. 108:20-25, 109:1-9, 193:5-14. The evidence showed, however, that Defendant did not have a lease interest or any other legal interest in the mobile home, nor was Defendant in possession of the property at the time of the searches. Tr. 26:1-3. Moreover, the Tenth Circuit has explained in an unpublished opinion that an individual's presence "at the sufferance of those lawfully authorized to occupy the premises [does] not give rise to a reasonable expectation of privacy." *United States v. Easterling*, 41 F. App'x 201, 204 (10th Cir. 2002) (citing *United States v. Jones*, 213 F.3d 1253, 1260 (10th Cir. 2000)); *see also Marshall v. Rudek*, 570 F. App'x 823, 829 (10th Cir. 2014) ("[I]t is well established that an eviction terminates any reasonable expectation of privacy in a dwelling."). Thus, even if Zotigh's direction that Defendant remove himself and his belongings from the mobile home constituted an improper "eviction," he still had no reasonable expectation of privacy in the mobile home.

b. Third-Party Consent

While the Court has determined that Defendant lacks standing to challenge the searches of Zotigh's mobile home and therefore need not consider the validity of the searches, the Court nonetheless finds that Mia Raya's consent to those searches was valid. "A third party's consent to search is valid if that person has either 'actual authority' or the 'apparent authority' to consent to a search of that property." *United States v. Kimoana*, 383 F.3d 1215, 1221 (10th Cir. 2004). When determining whether a third party had apparent authority, the Court examines the objective "reasonableness of the officer's belief," i.e., "[w]ould the facts available to the officer at the moment warrant a man of reasonable caution to believe that the consenting party had authority over the premises?" *Id.* at 1222 (alterations, omission, and internal quotation marks omitted).

Linda Zotigh was not married at the time of her death, and Agent Ware knew when he sought Mia Raya's consent that Raya was Zotigh's daughter and next of kin, along with Zotigh's other children. Hr'g Tr. 45:2-13, 49:20-22, 104:23-24, 106:8-13. It was therefore objectively reasonable for Agent Ware to assume that Mia Raya had authority to consent to the search of the mobile home.

II. DEFENDANT'S MOTION TO SUPPRESS EVIDENCE OBTAINED FROM THE SEARCH OF THE LEXUS RX 300 VEHICLE

Defendant next moves to suppress evidence obtained from the searches of Linda Zotigh's vehicle, a 1999 Lexus RX 300. According to the evidence received at the hearing, Agent Ware searched the vehicle on the morning of September 7, 2017, and then sealed and impounded the vehicle. Hr'g Tr. 40:22-25, 44:12-19, 56:19-25, 57:1-15. The vehicle

7

was searched again on October 11, 2017, with Mia Raya's consent. Hr'g Tr. 123:1-3, 139:20-25, 140:1-6.

By its motion, Defendant challenges the October 11, 2017 search of the vehicle on the ground that Mia Raya did not possess the authority to consent to the search. *See* Doc. No. 98, at 3-7. The government responds that (1) Defendant lacks standing to challenge the validity of the search because he did not have a reasonable expectation of privacy in the vehicle, (2) Mia Raya's consent to the search of the vehicle was constitutionally sufficient because, as one of Zotigh's children and next of kin, Mia Raya had apparent authority to consent to the search, and (3) the search was justified under the automobile exception to the warrant requirement. *See* Doc. No. 105, at 10-21.

   a. <u>Standing</u>

As discussed above, a defendant "cannot claim a violation of his Fourth Amendment rights based only on the introduction of evidence procured through an illegal search and seizure of a third person's property or premises." *United States v. Mosley*, 743 F.3d 1317, 1322 (10th Cir. 2014) (internal quotation marks omitted). "To establish standing to challenge a car search, the defendant bears the burden of showing that he had a 'legitimate possessory interest in or a lawful control over the car.'" *Valdez Hocker*, 333 F.3d at 1209 (alteration omitted). "[W]ithout a possessory or property interest in the vehicle searched, passengers lack standing to challenge vehicle searches." *Mosley*, 743 F.3d at 1322–23 (internal quotation marks omitted). The inquiry, however, remains one of "reasonable expectations." *Valdez Hocker*, 333 F.3d at 1209.

8

Testimony elicited at the hearing establishes that Zotigh was the vehicle's sole registered owner, Defendant did not have a valid Oklahoma driver's license, and Zotigh rarely, if ever, allowed others to drive her vehicle. Hr'g Tr. 30:17-25, 31:1-12, 140:9-15, 145:10-25, 146:1-4. Defendant did not present evidence of a legitimate ownership or possessory interest in the Lexus or of an expectation of privacy in the vehicle otherwise "recognized and permitted by society." *Byrd v. United States*, 138 S. Ct. 1518, 1527 (2018). Thus, the Court concludes that Defendant lacked an objectively reasonable expectation of privacy in the vehicle and therefore lacks standing to challenge its search.

  b. <u>Third-Party Consent</u>

The Court additionally concludes that Mia Raya had apparent authority to consent to the October 11, 2017, search of the vehicle for the same reasons as articulated regarding the search of Zotigh's mobile home. *See supra* Part I.b.

  III. DEFENDANT'S MOTION TO SUPPRESS EVIDENCE DERIVED FROM THE SEARCH AND SEIZURE OF DEFENDANT'S BLACK BAG

Defendant next seeks suppression of evidence obtained from the searches of a black bag in Defendant's possession at the time of his arrest. According to Defendant, Agent Ware's inventory searches of the bag were unconstitutional, requiring the suppression of all evidence gathered from the bag. *See* Doc. No. 99, at 9-12. The government responds that (1) the warrant ultimately issued for the bag and its contents was valid because it contained sufficient evidence to establish probable cause absent the information alleged to be tainted, and (2) the evidence is admissible under the inevitable discovery doctrine. *See* Doc. No. 104, at 6-10.

The evidence shows that Defendant was arrested on September 8, 2017, at a residence in El Reno, Oklahoma. At the time of his arrest, Defendant requested that a black bag containing his possessions be brought with him. Hr'g Tr. 7:9-25. Defendant was taken to the U.S. Marshals' sally port in Oklahoma City, at which point Defendant advised Agent Ware that he needed medication in his bag and requested that Agent Ware retrieve it. Agent Ware testified that he emptied the contents of the bag onto the floor but was unable to locate the medication and that, in doing so, Agent Ware observed the bag's contents, including boots, shoes, sandals, and other clothing and miscellaneous items. Hr'g Tr. 9:1-25, 10:1-16.

Agent Ware then viewed the bag's contents a second time on September 11, 2017, while conducting an inventory and photographing the bag's contents at the Bureau of Indian Affairs Concho Agency in El Reno. Hr'g Tr. 75:21-25, 82:6-13. On September 18, 2017, Agent Ware transported the bag to the Oklahoma State Bureau of Investigation ("OSBI") Crime Lab and spoke by telephone with the Assistant United States Attorney who was handling the investigation at that time, Lori Hines. Ms. Hines advised Agent Ware that they would seek a search warrant for various items, including the bag. Hr'g Tr. 19:17-25, 20:1-18. Accordingly, Agent Ware did not submit the bag to the OSBI but instead returned the bag to the BIA Concho Agency. Agent Ware at that time viewed the contents of the bag for the stated purposes of conducting a more thorough inventory and preparing an itemization for submission with a search warrant application. Hr'g Tr. 21:9-14. During that third viewing, Agent Ware observed what appeared to be blood on a sandal collected from the bag. Hr'g Tr. 80:2-24.

On November 1, 2017, Agent Ware applied for a search warrant for "[i]tems collected from [Defendant] during his arrest on September 8, 2017," including, among other clothing items, "a brown paper evidence sack bearing item number R.B. 5 which contains a black Outdoor Products bag containing 3 pairs of blue jeans, 7 pairs of shirts, one black underwear, several pairs of socks, one pair of brown boots, one pair of gray Jordan sandals size 13, and several miscellaneous items." Doc. No. 104-1, at 2, 15. A magistrate judge signed the search warrant that same day, stating that Agent Ware's warrant affidavit "establish[ed] probable cause to search and seize the . . . property . . . and that such search will reveal" "items showing evidence of ownership, or dominion and control of the items and/or containers described" and "[s]amples of material for various testing, including but not limited to DNA testing." *Id.* at 16-17.

    a. <u>The Search Warrant</u>

The government cites *United States v. Sims*, 428 F.3d 945 (10th Cir. 2005), in which the Tenth Circuit holds:

> When a warrant is tainted by some unconstitutionally obtained information, we nonetheless uphold the warrant if there was probable cause absent that information. An affidavit containing erroneous or unconstitutionally obtained information invalidates a warrant if that information was critical to establishing probable cause. If, however, the affidavit contained sufficient accurate or untainted evidence, the warrant is nevertheless valid.

*United States v. Sims*, 428 F.3d 945, 954 (10th Cir. 2005) (citations and internal quotation marks omitted); *see United States v. Karo*, 468 U.S. 705, 719 (1984); *United States v. Snow*, 919 F.2d 1358, 1460 (10th Cir. 1990). Probable cause exists when there is a fair probability that contraband or evidence of a crime will be found in a particular place."

*United States v. Dalton*, 918 F.3d 1117, 1127 (10th Cir. 2019) (internal quotation marks omitted).

Having reviewed Agent Ware's warrant affidavit, the Court concludes that the affidavit contains enough evidence to support probable cause to search Defendant's black bag and its contents, even after excising all information concerning the contents for the reason that it may have been derived from an illegal search. The affidavit details that Defendant was observed on video surveillance footage with what appeared to be blood on Defendant's right palm and left ring finger about an hour after Zotigh's mobile home was reported to be on fire. The affidavit details that Defendant was observed during his September 8, 2017 arrest as having several cuts and scrapes on his arms, hands, and legs, a very swollen right hand, and what appeared to be blood on his belt. The affidavit further details that Defendant had the black back with him when arrested, that the bag contained his belongings, and that Defendant "requested law enforcement to bring his black bag with him." Doc. No. 104-1, at 9-10. This information is sufficient to show a fair probability that the contents of the bag would contain materials for testing that would evidence the specified crimes or property used in committing those crimes. *See id.* at 1, 3. While the descriptions of the clothing items within the bag, including Agent Ware's observation of "what appeared to be possible red/bloody spots on a pair of gray size 13 Jordan slippers," certainly bolsters the finding of probable cause, the Court does not find that this evidence was "critical to establishing" probable cause. *Id.* at 2, 9, 14; *Sims*, 428 F.3d at 954 (internal quotation marks omitted).

b. Inevitable Discovery

Relatedly, the parties dispute whether the evidence from the black bag is admissible under the inevitable discovery exception to the exclusionary rule. The Court finds that, assuming Agent Ware's inventory searches of September 11 and September 18, 2017, violated the Fourth Amendment, the evidence obtained from the black bag is nonetheless admissible because it "inevitably would have been discovered by lawful means." *United States v. Souza*, 223 F.3d 1197, 1202 (10th Cir. 2000).

The inevitable discovery exception applies "whenever an independent investigation inevitably would have led to discovery of the evidence, whether or not the investigation was ongoing at the time of the illegal police conduct." *Id.* at 1203 (internal quotation marks omitted). The Tenth Circuit has articulated the following factors as helpful to the determination:

> 1) the extent to which the warrant process has been completed at the time those seeking the warrant learn of the search; 2) the strength of the showing of probable cause at the time the search occurred; 3) whether a warrant ultimately was obtained, albeit after the illegal entry; and 4) evidence that law enforcement agents "jumped the gun" because they lacked confidence in their showing of probable cause and wanted to force the issue by creating a fait accompli.

*Id.* at 1204 (citations and internal quotation marks omitted). "The government has the burden of proving by a preponderance of the evidence that the evidence in question would have been discovered in the absence of the Fourth Amendment violation." *Id.* at 1203.

Assuming that the September 11 and September 18, 2017, searches of the bag were not valid inventory searches, Agent Ware nonetheless viewed the bag's contents on September 8, 2017, pursuant to Defendant's consent and was therefore aware as of that

13

date that the contents included Defendant's clothing, which would likely contain testable quantities of DNA. Further, the decision to seek a warrant was made prior to Agent Ware's observation of the red substance on the sandal during his September 18, 2017, inventory, and the Court has already determine that Agent Ware's warrant affidavit contained sufficient probable cause for the search even absent that observation.

Accordingly, the inevitable discovery exception applies in this case because the evidence would have been lawfully discovered pursuant to a warrant.

## CONCLUSION

For the foregoing reasons, the Court DENIES Defendant's Motion to Suppress Evidence Derived from Illegal Search of Mobile Home (Doc. No. 97), Defendant's Motion to Suppress Evidence Obtained from the Illegal Search of the Lexus RX 300 Vehicle (Doc. No. 98), and Defendant's Motion to Suppress Evidence Derived from Illegal Search and Seizure of Defendant's Black Bag (Doc. No. 99).

IT IS SO ORDERED this 3rd day of October, 2019.

_____
CHARLES B. GOODWIN
United States District Judge